THE BERKSHIRE WOOLLEN COMPANY *vs.* MOODY S. PROCTOR & another.

If the agent of a corporation, engaged in their business, becomes the guest of an innkeeper, and is robbed in the inn, while he is a guest, of money delivered to him by his principals to be expended in their behalf, the innkeeper is liable therefor to the corporation.

If a traveller who puts up at an inn, and is received there as a guest, makes an agreement with the innkeeper for the price of his board by the week, he does not thereby cease to be a guest and become a boarder.

The liability of an innkeeper for a loss by his guest extends to all the movable goods and money, which are placed within the inn, and is not restricted to such things and sums only, as are necessary and designed for the ordinary travelling expenses of the guest.

A usage at an inn, for the guests to leave their money or valuables at the bar, or with the keeper of the house or his clerk, is not binding upon a guest, unless he has actual knowledge or notice of it; and whether he has such knowledge or notice is a question of fact for the jury.

In an action brought against an innkeeper by his guest, for a loss of money stolen from the apartment of the guest, evidence of the custom of other individual innkeepers and their guests, in regard to depositing the money of the latter in safes kept for the purpose, is inadmissible.

IN this case, which was argued by *E. Merwin*, for the defendants, and by *I. Sumner*, for the plaintiffs, on exceptions taken by the former to the rulings and instructions of *Byington*, J., at the trial in the court of common pleas, the facts sufficiently appear in the opinion of the court, which was read at the September term, 1852, as drawn up by

FLETCHER, J. This is an action on the case against the defendants, as innkeepers, for the alleged loss of five hundred dollars of the plaintiffs' money in the inn of the defendants, known as the Marlboro' Hotel, in the city of Boston. It was admitted that the defendants were innkeepers, and proprietors of said Marlboro' Hotel.

It appears from the testimony, that about the 15th of October, 1849, Asa C. Russell, an agent and servant of the plaintiffs, went to Boston with some twenty five witnesses, to take charge of a lawsuit to which the plaintiffs were a party; that he took with him one thousand dollars of the plaintiffs' money, for the purpose of defraying the expenses of their said suit; that he, with some of the plaintiffs' witnesses, put up at the

Marlboro' Hotel; that he kept a part of the money in his trunk, in his room, and took it out as he wanted it for daily use, to pay witnesses ; that on the 2d of November, 1849, he counted his money, and found he then had just five hundred dollars, which he rolled up in a newspaper, and put the packet in the bottom of his trunk, under his clothes, and locked the trunk; that on the evening of the 3d of November, he found that the lock had been picked and the money had been taken from the trunk. He immediately gave notice to the defendants, and he with them made diligent search for the money ; but it was never found. Some of the plaintiffs' witnesses boarded with the defendants at their said inn, and Russell told the defendants that he would be responsible for the board of said witnesses. He agreed with the defendants for the price of his board by the week, and if he did not stay a week the price was to be greater than at the rate by the week. He testified that he thought he told one of the defendants that he was agent of the plaintiffs, but was not certain ; that he did not inform the defendants that he had money with him, till after the loss; that the defendants called his attention to a safe in the office after the loss, but that he did not know whether he saw it before the loss or not. He further testified that he thought it was a custom in Boston for innkeepers to have safes. but not a general custom for guests to deposit in them. He did not know that any body deposited packets in the Marlboro' Hotel. He also testified that it was his usual practice to lock the door of his room when he went out, and to leave the key in the door, but could not speak positively as to the 2d and 3d of November. This witness, and others produced by the plaintiffs, testified to the practice of guests at the defendants' inn, of leaving keys in the doors of their lodging rooms. To this the defendants objected, but it was admitted, with the instruction, that it was not to be considered by the jury, unless shown to be the usage of the house, and that known to the defendants. Russell further testified, that the only regulations of which he saw notice given, were contained in a printed notice posted in the house, which will be hereafter examined. One of the plaintiffs' witnesses testified that one of the defendants stated,

after the loss, that when he suspected that guests had large sums of money, he was in the habit of speaking to them about it, and regretted he had not done so to Russell.

The defendants, in their defence, offered to prove a general and uniform custom with innkeepers in Boston, to provide safes for the purpose of depositing therein large sums of money and other valuable things which their guests may have, and the custom of guests to deposit accordingly. The court ruled that this evidence was inadmissible, and this ruling forms the ground of one of the defendants' exceptions. But the court ruled that it was competent for the defendants to prove fully what was the custom of the defendants' hotel, and of their guests in this particular. Thereupon both parties went at large into evidence as to this alleged custom at the defendants' hotel, and of their guests.

Upon the whole evidence in the case, the defendants contended, and requested the court to instruct the jury, that the plaintiffs were not the guests of the defendants, and that the defendants were not responsible to the plaintiffs for their money in the possession of Russell, though he might be the defendants' guest. But the court declined so to instruct the jury, and instructed them, that if Russell was agent and servant of the plaintiffs, and the guest of the defendants, as before stated, the defendants would be responsible to the plaintiffs for the loss of their said money, without notice, so far as the preceding objections were concerned.

The defendants also contended that, upon the foregoing facts, Russell was not a guest, but a boarder, and that therefore the liability of innkeepers for any losses sustained by Russell as agent and servant, or otherwise, did not attach to the defendants. But the court ruled, that the facts testified to by Russell, if believed, constituted him, in law, a guest, and not a boarder, and that the liabilities of innkeepers attached to the defendants for any loss sustained by him while in their inn as aforesaid.

The defendants further contended, that in any event they were not liable for the loss in this case; that innkeepers are liable in case of loss, at the most, only for a sum of money,

necessary and appropriate, and designed for the ordinary expenses of the guest, including his expenses at the inn; and that in this case the defendants were not liable for this packet of five hundred dollars, inasmuch as the same was not necessary, appropriate, or designed for the ordinary travelling and inn expenses of said Russell, but was for the purpose of defraying the expenses of said lawsuit; and the defendants requested the court so to instruct the jury. But the court instructed the jury that, if the money in this case was kept by said Russell in his room, and was for the purpose of defraying the expenses of the business for which he was there in the lawsuit; and if the defendants had knowledge of his business as agent of the plaintiffs, and of their liabilities to their witnesses; and if the plaintiffs were responsible to the defendants for the board of their witnesses, though they did not in fact pay for the board of all; and the sum was a reasonable one for such business; then the defendants would not be relieved from their liability on account of the amount of the money, or of the purpose for which the agent had the same.

The defendants further contended, that though they might be primarily liable in law, they would be exonerated from all liability for the loss by showing that the loss was occasioned by the negligence of the guest himself, and upon this point requested the court to instruct the jury, that if they believed the custom of depositing in the safe prevailed in the defendants' hotel, as testified to by their witnesses, though no special notice thereof was given to said Russell, he being a guest in said hotel, was bound by said custom, and was in law presumed to know it; and that upon the facts disclosed, the jury were bound to infer that the loss was occasioned by the negligence of said Russell in keeping the packet in his trunk and giving no notice to the defendants that he had the same, and leaving his door with the key in the lock, as stated, and not by the negligence of the defendants. But the court declined so to instruct the jury, and instructed them that, if said Russell, the plaintiffs' agent and servant, had knowledge of said custom of defendants' hotel, the plaintiffs would be bound by it; but if there was such a custom as was testified to by the defend-

Berkshire Woollen Company *v.* Proctor & another.

ants' witnesses, and said Russell had no knowledge of it, the plaintiffs would not be affected by it, unless he was wilfully ignorant of it.

The jury were also instructed, that the defendants would not be responsible for the loss, if it was occasioned by the fault or the negligence of said Russell, the plaintiffs' agent, and this matter was submitted to them for their decision, upon all the evidence introduced by the parties bearing upon this ques tion.

A verdict having been found for the plaintiffs, the defendants alleged exceptions to the foregoing rulings and instructions of the court of common pleas.

It is maintained, in behalf of the defendants, that the evidence offered by them, to show a general and uniform custom of the hotels in Boston, and their guests, to have money deposited in safes kept for that purpose, which was excluded at the trial, should have been admitted. This evidence is in depositions on file, which are made a part of the case, to be referred to in order to show what was the evidence offered. This testimony consists of four depositions, each deponent being the keeper of a hotel in Boston. Each witness states the custom of his own particular house and guests; but neither of them is able to state, or undertakes to state, any general and uniform custom upon the subject in question among the various hotels in Boston. The knowledge of these witnesses is confined to their own houses and customs, respectively, and does not extend to other houses, so as to enable them to speak of their own knowledge of any general or uniform custom. Proof of the usage of four houses, out of the whole number of public houses in Boston, would hardly be regarded as establishing any general usage. But the usage of these four houses does not appear to be uniform. Two of the witnesses testified that they had printed regulations posted up in the rooms of their respective houses, among other things, requiring their guests to leave their money and other valuable articles at the office, to be deposited for safety in their safe. The two other witnesses testified that they had printed regulations posted up in their respective houses; but that there was no

regulation or notice in regard to depositing money, or other valuable articles, for safe keeping. In two of the four houses, therefore, of whose custom evidence was particularly given, it was the custom to give particular notice to the guests to deposit their money, and in two of them there was no custom to give such notice. There was, therefore, in the custom of these four houses, a very striking want of uniformity in a matter of vital importance. In regard to the custom of the guests in these houses, it appears, from the evidence, that some of them deposited their money, and this is all which does distinctly appear. The evidence wholly fails to establish the position, that there was any general, uniform custom of the guests, even in these four houses, to deposit their money in the safes. Independently, therefore, of the reason for the exclusion of this evidence, that, in determining the duties and liabilities of these defendants, the custom of other innkeepers and their guests was wholly irrelevant, the evidence was properly excluded, as being wholly incompetent, giving it its whole effect, to be submitted to the jury, to warrant them in finding the existence of any such general and uniform custom among innkeepers and their guests, as was set up by the defendants. Such a verdict, if found upon this evidence, could not be sustained. A usage to be adopted as a rule of law should be certain, and should be general in the branch of trade or business in regard to which it is set up, so as to authorize a presumption, that it is known to those dealing, or concerned in that branch of trade or business. A very eminent judge has said, " I am among those judges who think usages among merchants should be very sparingly adopted, as rules of law, by courts of justice, as they are often founded in mere mistake, and more often in the want of enlarged and comprehensive views of the full bearing of principles." Story, J. in *Donnell* v. *Columbian Ins. Co.* 2 Sumner, 377. The rights of parties must be determined by law, and not by any vague, and undeterminate and partial usage of particular persons or places. A strict adherence to this principle is essential to a sound and consistent administration of justice. A departure from it would work great injustice. No man could know what were

Berkshire Woollen Company *v.* Proctor & another.

his rights or his duties, if they were to be determined by loose evidence of some particular, indefinite and partial usage.

It is very improbable, from the nature of the case, that there could be any such general and uniform custom as the defendants attempted to prove. Individuals would, most likely, act according to their individual discretion, under the particular circumstances in which they were respectively placed. It is very difficult to see how it could be known, whether guests having money did, or did not, generally or uniformly, deposit it for safe keeping. The fact, that some deposited their money, might be readily known; but the fact that others, and perhaps the greatest number, having money, did not deposit it, might not be known.

But it is sufficient, that the evidence offered in this case was incompetent to establish, or warrant the jury in finding, the existence of any such general and uniform usage as was set up by the defendants. The defendants were permitted fully to prove what was the custom of their own house and guests. This was the only custom with which they were connected, and of which they could avail themselves. For what purpose the defendants proposed to give evidence of the custom of other houses and their guests, was not stated, and does not appear. Surely the defendants could not take advantage of the custom of other houses, if it differed from their own; and if it was the same as their own, so far as it appears, it would have been wholly immaterial. The defendants having been permitted fully to prove the custom of their own house and guests, it does not appear that their rights were, or could be, in any way affected by the exclusion of the evidence as to the custom of other houses and their guests.

It is further maintained for the defendants, that Russell was not a guest, in the sense of the law, but a boarder. But Russell surely came to the defendants' inn as a wayfaring man and a traveller, and the defendants received him as such wayfaring man and traveller, as a guest at their inn. Russell being thus received by the defendants, as their guest at their inn, the relation of innkeeper and guest, with all the rights and liabilities of that relation, was instantly established between them. The

length of time that a man is at an inn, makes no difference, whether he stays a week or a month, or longer, so that always, though not strictly *transiens*, he retains his character as a traveller. Story on Bailm. § 477. The simple fact that Russell made an agreement as to the price to be paid by him by the week, would not, upon any principle of law or reason, take away his character as a traveller and a guest. A guest for a single night might make a special contract, as to the price to be paid for his lodging, and whether it were more or less than the usual price, it would not affect his character as a guest. The character of guest does not depend upon the payment of any particular price, but upon other facts. If an inhabitant of a place makes a special contract with an innkeeper there, for board at his inn, he is a boarder, and not a traveller or a guest, in the sense of the law. But Russell was a traveller, and put up at the defendants' inn as a guest, was received by the defendants as a guest, and was, in the sense of the law, and in every sense, a guest.

Another ground of defence taken in behalf of the defendants is, that this action cannot be maintained, because the plaintiffs, being a corporation, were not, and could not be, in the nature of things, the guest of the defendants; that an innkeeper is liable only for the goods of his guest; and that, therefore, the defendants are not liable for the money of the plaintiffs, as they were not, actually nor constructively, the guests of the defendants. But this reasoning cannot prevail. Russell was the defendants' guest, and he was the agent and servant of the plaintiffs; and the money which was lost, and for which this suit was brought, was the plaintiffs' money, in the possession of Russell, delivered by the plaintiffs to him, as their servant and agent, to be expended in their business. This action, therefore, can well be maintained upon the well settled principle of law, that, if a servant is robbed of his master's money or goods, the master may maintain the action against the innkeeper in whose house the loss was sustained. This point was directly settled in *Bedle* v. *Morris*, Yelv. 162, and notes and cases cited in the American edition. In that case it was said by the court, "And moreover it is not mate-

rial whether he was his servant or not; for, if it was his friend by whom the party sent the money, and he is robbed in the inn, the true owner shall have the action." *S. C.* Cro. Jac. 224. The doctrine is thus stated in Bacon: "If a man's servant, travelling on his master's business, comes to an inn with his master's horse, which is there stolen, the master may have an action against the host, because the absolute property is in him. So, if A. sends money by his friend, and he is robbed in his inn, A. shall have the action." Bac. Ab. Inns and Inn-keepers, C. 5. Such was also adjudged to be the law in *Towson* v. *Havre de Grace Bank*, 6 Har. & Johns. 47, 53. In this case, after stating the position, that if A. sends his money by his friend, who is robbed in the inn at which he is a guest, A. shall have the action, the court say: "And there is no reason why it should not be so, the innkeeper being chargeable, not on the ground that he entertains the owner of the money, or other goods, but because he receives, no matter by whom paid, a compensation for the risk." See also *Bennett* v. *Mellor*, 5 T. R. 273.

The case of *Mason* v. *Thompson*, 9 Pick. 280, goes still further. In that case, G. hired the horse, chaise and harness of the plaintiff, and drove the same to Boston, where she stopped, as a visitor, with a friend, and sent the horse, chaise and harness to the stable of the defendant, who was an innkeeper, to be kept during her visit. After four days, she sent for the property, and found that a part of it had been stolen, for which the innkeeper was held liable to the plaintiff, who was the owner. It was urged for the defendant, that neither G. nor the plaintiff was the defendant's guest, as neither of them had diet or lodging at the defendant's inn. But the court said, "it is clearly settled, that to constitute a guest, in legal contemplation, it is not essential that he should be a lodger, or have any refreshment, at the inn. If he leaves his horse there, the innkeeper is chargeable on account of the benefit he is to receive from the keeping of the horse." Upon this point, the case of *Yorke* v. *Grenaugh*, 2 Ld. Raym. 866, was relied on. In *Grinnell* v. *Cook*, 3 Hill, 485, the case of *Mason* v. *Thompson* was commented on, and that part of it which held, "that,

36 *

to constitute a guest in legal contemplation, it is not essential that he should be a lodger, or have any refreshment at the inn," was controverted, as not warranted upon principle, or by adjudged cases. Bronson, J., in giving the opinion of the court, says : " But when, as in *Mason* v. *Thompson,* the owner has never been at the inn, and never intends to go there as a guest, it seems to me little short of a downright absurdity to say, that, in legal contemplation, he is a guest." But this particular point is not material in the present case, as in this case Russell was the defendants' guest. Though it be settled that the owner of the goods or money may have an action, it may also be, that an action could be maintained either by the servant or master.

Another ground of defence is, that the defendants are not liable for the loss in this case; as innkeepers are liable for such sums only, as are necessary and designed for the ordinary travelling expenses of guests, and for no more. Such was the doctrine held by this court in the case of *Jordan* v. *Fall River Railroad,* 5 Cush. 69, in regard to the liability of a carrier of passengers for baggage. Formerly, it was held, that a carrier of passengers was not answerable for baggage at all, unless a distinct price was paid for it; but it is now held, from the usual course of business, that a contract to carry the ordinary baggage of the passenger is included in the principal contract, in relation to the passenger, and the price paid for fare is considered as including a compensation for carrying the baggage; so that a carrier is answerable for the loss of baggage, although there was no particular separate agreement concerning it. But this implied undertaking by a carrier of passengers does not extend beyond ordinary baggage, or such things as a traveller usually carries with him for his personal convenience on the journey, including such an amount of money as, under the circumstances, may be necessary, and is designed, for the payment of travelling expenses. A common carrier of passengers is not responsible, unless by a special contract, for goods and chattels, or money, not properly belonging to the baggage of the passenger. *Jordan* v. *Fall River Railroad,* 5 Cush. 69. But common carriers of goods are re-

sponsible for any amount of goods and money which may be intrusted to them, when the carriage of money is within the scope of their employment and business.

The responsibility of innkeepers for the safety of the goods and chattels and money of their guests is founded on the great principle of public utility, and is not restricted to any particular or limited amount of goods or money. The law on this subject is very clearly and succinctly stated by Chancellor Kent, as follows: " The responsibility of the innkeeper ex-tends to all his servants and domestics, and to all the movable goods and chattels and moneys of his guest, which are placed within the inn." 2 Kent Com. 593. The liability of an innkeeper for the loss of the goods of his guest being founded, both by the civil and common law, upon the principle of public utility, and the safety and security of the guest, there can be no distinction, in this respect, between the goods and money. *Kent* v. *Shuckard*, 2 B. & Ad. 803; *Armistead* v. *White*, 6 Eng. Law & Eq. R. 349; *Quinton* v. *Courtney*, 1 Haywood, 40. The principle for which the defendants contend, that innkeepers are liable for such sums only, as are necessary and designed for the ordinary travelling expenses of the guest, is unsupported by authority, and wholly incon sistent with the principle upon which the liability of an innkeeper rests. The reasoning, both of the civil and common law, by which the doctrine of the liability of innkeepers, without proof of fraud or negligence, is maintained, is, that travellers are obliged to rely, almost entirely, on the good faith of innkeepers; that it would be almost impossible for them, in any given case, to make out proof of fraud or negligence in the landlord; and that therefore the public good and the safety of travellers require that innholders should be held responsible for the safe keeping of the goods of the guests. This reasoning maintains the liability of the innkeeper for the money of the guest, quite as strongly as his liability for goods and chattels, and it would be clearly inconsistent with the general principle upon which the liability is founded, to hold that the defendants were not responsible for the money lost in the present case. 2 Kent Com. 592 to 594; Story on Bailm. §§ 478, 481; *Sneider* v. *Geiss*, 1 Yeates, 35.

The defendants further contended that, although they might be, primarily, liable in law, yet they would be exonerated from all liability, by showing that the loss was occasioned by the negligence of the guest himself, and upon this point requested the court to instruct the jury " that, if they believed that the custom of depositing in the safe prevailed in the defendants' hotel, as testified to by their clerks and servants, although no special notice thereof was given to said Russell, and if, contrary to said custom, said Russell retained this packet in his possession, keeping it in his trunk, gave no notice to the defendants that he had the same, and left his door with the key in the lock, in the manner stated, and took no other precaution to secure his room, (although the jury should believe that, in this respect, he followed the practice of other guests, who were not proved to have kept money in their rooms,) said Russell, being a guest at said hotel, was bound by said custom, and was, in law, presumed to know it; and that, upon these facts, the jury were bound to infer that the loss was occasioned by the negligence of said Russell, and not of the defendants." But the court declined so to instruct the jury, and instructed them, that if Russell, the agent, had knowledge of said custom of the hotel, the plaintiffs would be bound by it, and if there was such a custom, as testified to by the witnesses for the defendants, and Russell had no knowledge of it, the plaintiffs would not be affected by it, unless he was wilfully ignorant of it. The jury were also instructed, that the defendants would not be responsible for the loss, if it was occasioned by the fault or negligence of Russell, the plaintiffs' agent; and this matter was submitted to them for decision, upon the evidence introduced by the parties bearing upon the question.

The defendants' counsel objected to the instruction, " that if there was such a custom, as testified to by the witnesses for the defendants, and Russell had no knowledge of it, the plaintiffs would not be affected by it, unless he was wilfully ignorant of it;" and contended, that Russell was bound in law to know the custom, and was in law presumed to know it, and that the jury should have been so instructed. The evidence

of the custom at the defendants' hotel is contained in the following question and answer, in the deposition of the defendants' clerk : " *Interrogatory.* Is there not a custom amongst those stopping at hotels, to leave money or valuables at the bar, or with the keeper of the house, or his clerks ? State particularly as to this custom, if it exists, and how general it is. *Answer.* It exists at the Marlboro' Hotel, I know, and to some extent in other hotels." Nothing particular or specific, in regard to the custom, is stated; nor whether it was the custom of all, or of what proportion of the defendants' guests, having money, to deposit it for safe keeping. In the printed regulations, posted up at the defendants' inn, and which purported to give notice to the guests of the regulations and usages of the house, there was not the slightest notice or intimation to the guests to leave their money at the bar, or with the keepers of the house, or their clerks, or that such was the custom of the house; nor did it appear that any such notice was given in any way to Russell. There surely can be no legal inference or presumption of law, that Russell had knowledge of this particular usage of the defendants' house. Upon this point, the case of *Stevens* v. *Russell*, 9 Pick. 198, is conclusive. In that case, it appeared that it was the usage in a woollen factory in Andover, and some other neighboring factories, that no person employed should leave their service without giving a fortnight's notice of his intention to quit. A weaver, who did not know of this usage, worked in the factory, and left without giving any previous notice. , It was held, that as this was a particular, private usage, to make it binding on the party, it must appear, as a matter of fact, that he knew of the usage when he entered on the work, or before he left it. Proof of knowledge, as a matter of fact, is required in order to give effect to any and all particular usages, not of so general a nature as to furnish a presumption of knowledge. There certainly can be no legal presumption that every traveller who alights at an inn, has knowledge of the particular usages of that particular inn, of which there is no notice in any way given to him. Whether Russell had and knowledge of the alleged custom of the defendants' inn for

the guests to deposit their money, was properly submitted to the jury as a question of fact, to be decided by them upon the evidence in the case; and the instructions of the court, as to the effect of such knowledge on the rights of the plaintiffs, were certainly sufficiently favorable to the defendants.

All the exceptions are overruled, and judgment must be rendered on the verdict for the plaintiffs.