NATHANIEL M. HEALEY *vs.* ELVIRA H. GRAY.

Somerset.   Decided November 27, 1878.

*Innkeeper.   Bailment.*

To create the common law liability of an innkeeper the relation of guest and host must exist.

Where one leaves his horse with an innkeeper, with no intention of stopping at the inn himself, but stops at a relatives, whose guest he is, he is not a guest of the inn.

In such a case, the liability of the landlord is simply that of an ordinary bailee for hire.

ON MOTION.

CASE against an innkeeper, to recover the value of the plaintiff's mare, put into the defendant's stable December 4, 1875, and found dead therein the next morning, alleging negligence on the part of the defendant.

Jesse Healey drove the plaintiff's mare from Concord to Solon and delivered her to the defendant's hostler at her inn, to be kept till the next day, Healey himself not stopping at the inn, but with his son-in-law in the same village. The next morning the mare was found dead in defendant's stable. There was evidence tending to show that she was hitched in the usual manner, and came to her death by halter pulling. There was evidence that she had that habit, and evidence to the contrary. Neither the defendant nor her hostler had any information of such habit. The verdict was for the plaintiff for $166.35, which the defendant moved to set aside as against law and evidence.

*A. H. Ware*, for the defendant.

*O. R. Bacheller*, for the plaintiff.

APPLETON, C. J. This is an action against the defendant, an innkeeper, for the loss of a horse left by the plaintiff at her inn.

The plaintiff did not stop or intend stopping at the defendant's inn, but staid with a son-in-law, leaving his horse in the charge of the defendant's hostler. Whether, under such circumstances, the plaintiff is to be regarded as a guest and entitled to the rights of one may well be questioned. In *Mason* v. *Thompson*, 9 Pick. 280, the traveler did not go to the inn, but stopped as a visitor with a friend and sent her horse and carriage to the inn. After four days she sent for the property and found a part of it had been stolen, and the innkeeper was held liable. In *Berkshire Woolen Co.* v. *Proctor*, 7 Cush. 417, 425, the authority of *Mason* v. *Thompson* was somewhat doubted. But in *Grinnell* v. *Cook*, 3 Hill, 485, its authority was denied, and it was there held that one who has neither been at the inn nor intends going there, though he may have sent his goods to be taken care of by the innkeeper, could not be regarded as a guest. In *Ingallsbee* v. *Wood*, 36 Barb. 455, Bockes, J., says: "Ingallsbee was not a traveler. He had arrived at his place of destination, and had taken up a temporary abode and had become a sojourner at the house of his mother-in-law. He accepted entertainment and accommodation there. If the guest of any one, he was her guest. He did not receive nor contemplate any favor at the inn by way of personal entertainment there." In that case the loss was of a horse left by one whom the court found not to be a guest. The case came before the court of appeals in 33 N. Y. 577, and the judgment of the court below was affirmed. Porter J., in delivering the opinion, says: "The liability as an innholder presupposes the relation of host and guest, . . when one receives property from one who is neither a guest nor a traveler, the custom of the realm has no application. The property is subject to no lien, and protected by no insurance. His obligation is simply that of an ordinary bailee for hire." To enforce the strict common law liability of an innkeeper, the technical relation of guest and innkeeper must be established. *Mowers* v. *Fethers*, 61 N. Y. 34. In *Binns* v. *Pigot*, 9 C. & P. 208, it was held that an innkeeper has no lien on a horse placed in his stable for its keep, unless it

be placed there by a guest. In *Lynar* v. *Mossop*, 36 Up. Can. Q. B. 231, the plaintiff arrived in Toronto from Ireland, and drove from the railway station to defendant's hotel, leaving a portmanteau and carpet bag, etc., with him,—saying he only wanted a room to change his dress before going to a friend's—had his things taken to it, and, after occupying it about half an hour, went to his friend's with whom he remained. He was furnished with a key to his room but did not use it. Next morning he went to get his things but the portmanteau was not to be found. *Held*, the plaintiff was not a guest after he had dressed and left the inn, and that the defendant was not liable as an innkeeper, the portmanteau having been lost after he left.

In the case at bar the plaintiff was not a guest nor entitled to the rights of one. In *Shaw* v. *Berry*, 31 Maine, 479, the plaintiff was a guest, and the defendant was held to his strict common law liability as an innholder.

The defendant was liable only as an ordinary bailee for hire, and as such bailee we do not think a case is made out against her. The evidence shows that the mare received usual and ordinary care. No neglect is shown on the part of the defendant or her servant. In the morning, the mare was found dead by strangulation—the result of halter pulling. If the mare had the habit of halter pulling, and that fact was known to the plaintiff, it was his duty to communicate it to the defendant or her servant, so that any and all necessary precautions might be taken to prevent any injury arising from this habit. If it was not known to the plaintiff, while he would be exonerated from negligence in not informing the defendant, yet he cannot justly impute negligence to her for not guarding against the effect of a habit, the existence of which was unknown. The mare of the plaintiff was in fault for her own self destruction, and not the defendant.

<em>Motion sustained. New trial granted.</em>

Danforth, Virgin, Libbey and Peters, JJ., concurred.