- TICEHURST v. BEINBRINK.

(Supreme Court, Appellate Term. June 1, 1911.)

1. INNKEEPERS (§ 11*)—LIABILITY FOR LOSS OF PROPERTY.
    The liability of an innkeeper, as such, for property left with him, depends upon the existence of the relation of host and guest.
    [Ed. Note.—For other cases, see Innkeepers, Cent. Dig. § 19; Dec. Dig. § 11.*]

2. INNKEEPERS (§ 8*)—GUESTS.
    One may be a guest of an innkeeper actually or constructively.
    [Ed. Note.—For other cases, see Innkeepers, Cent. Dig. § 12; Dec. Dig. § 8.*]

3. INNKEEPERS (§ 8*)—GUESTS—INTENTION.
    A real or presumed intention to become a guest of an innkeeper is a controlling factor in determining whether one is in fact a guest.
    [Ed. Note.—For other cases, see Innkeepers, Cent. Dig. § 12; Dec. Dig. § 8.*]

4. INNKEEPERS (§ 11*) — GUESTS — CONTINUANCE OF RELATION DURING ABSENCE.
    If a guest leave an inn intending to return, the relation of host and guest is, in the absence of evidence to the contrary, deemed to continue in the interim, as regards the innkeeper's liability for property of the guest. as to animate, but not as to inanimate, property, because of the innkeeper's gaining a profit from the former, but not from the latter.
    [Ed. Note.—For other cases, see Innkeepers, Cent. Dig. § 19; Dec. Dig. § 11.*]

5. INNKEEPERS (§ 11*)—CONTRACT TO STABLE HORSE—LIABILITY.
    Where one makes a contract with an innkeeper to stable and care for his horse, but does not become or intend to become a guest, the innkeeper is not liable, as such, for the loss of the horse.
    [Ed. Note.—For other cases, see Innkeepers, Cent. Dig. § 19; Dec. Dig. § 11.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. INNKEEPERS (§ 11*)—GUESTS—CREATION OF RELATION.

That one, making a contract with an innkeeper to stable and care for his horse, receives refreshments at the inn under a contract separate and distinct from that under which the horse is cared for, as by buying a drink ånd a cigar, does not of itself constitute him a guest, so as to make the innkeeper liable, as such, for the loss of the horse.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. § 19; Dec. Dig. § 11.*]

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by Harry Ticehurst against Herman Beinbrink. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before SEABURY, LEHMAN, and GERARD, JJ.

William F. Ryan (Henry C. Frey, of counsel), for appellant.
Train & Olney (Arthur C. Train, of counsel), for respondent.

SEABURY, J. The plaintiff has recovered a judgment against the defendant, who is an innkeeper, for the value of a horse, which was stolen while in the defendant's stable. The plaintiff, a veterinary surgeon, intending to drive his horse from Oyster Bay, Long Island, to New York City, decided, when he reached Hollis, Long Island, not to go any further with his horse at that time. He stopped at the hotel or inn of the defendant. He tied his horse under a shed, and went into the inn, and asked the person whom he found in charge if he could leave his horse at the inn stable during the night, as he intended to return to the borough of Brooklyn. The person in charge of the inn said, "We don't board no horse here, and don't keep no livery stable," but finally consented that the horse might be left there during the night. While in the inn, the plaintiff received and paid for a drink of whisky and a cigar. The horse was unharnessed and put in the stable attached to the inn. The plaintiff returned to the inn, and after waiting at the inn about 20 minutes boarded a trolley car and rode to Jamaica, where he took a train for the borough of Brooklyn, New York City. During that night the horse was stolen from the stable of the defendant.

The evidence fails to establish any negligence upon the part of the defendant, and the appeal turns upon whether the defendant is liable as an innkeeper. The proof leaves no doubt, and it is not disputed, that the defendant is an innkeeper. Cromwell v. Stephens, 2 Daly, 15. It is unnecessary to comment upon the nature of the liability of an innkeeper, or to point out the reasons upon which that liability rests. Crapo v. Rockwell, 48 Misc. Rep. 1, 94 N. Y. Supp. 1122. The question now to be decided is whether the defendant, under the circumstances recited above, is liable to the plaintiff for the value of the horse.

It may be conceded at the outset that the authorities on the subject are not in harmony. This is true, not only of the English cases, but even to a greater degree of the American authorities. There is undoubtedly respectable authority for holding the innkeeper liable.

Yorke v. Grenaugh, 2 Ld. Raymond, 866; Yorke v. Grindstone, 1 Salk. 388; Day v. Bather, 2 H. & C. 14 (1863); Bacon's Abr. tit. "Inns and Innkeepers," c. 5, p. 235 (Ed. 1856); Mason v. Thompson, 9 Pick. (Mass.) 280, 20 Am. Dec. 471; Post v. McGraw, 25 Wend. 653 (1841); McDonald v. Edgerton, 5 Barb. 560; Russell v. Fagan, 7 Houst. (Del.) 389, 8 Atl. 258; McDaniels v. Robinson, 26 Vt. 316, 62 Am. Dec. 574. In Yorke v. Grenaugh, 2 Ld. Raymd. 866, it was held by all the justices, except Holt, C. J., that:

"If a man set his horse at an inn, though he lodge in another place, that makes him a guest, and the innkeeper is obliged to receive him; for the innkeeper gains by the horse, and therefore that makes the owner a guest, though he be absent. Contra of goods left there by a man, because the innkeeper has no advantage of them."

This case was followed, and the rule as to the innkeeper's liability extended, in Mason v. Thompson, 9 Pick. (Mass.) 280, 20 Am. Dec. 471. In this latter case, the plaintiff's servant delivered a horse to the innkeeper to be fed, but neither lodged nor received any refreshment at the inn, and the innkeeper was held liable upon the supposed authority of the Yorke Case. These two cases may be said to be the props upon which all the cases cited above in support of holding the innkeeper liable rest. It is not necessary to discuss all of these cases, for they are mere reflections of the rule declared in these two cases. Indeed, Mason v. Thompson cites no other authority than the Yorke Case in support of the rule there declared. In the last analysis, the authority for holding the innkeeper liable in such a case as the present is the Yorke Case.

The two existing reports of the Yorke Case (2 Ld. Raymond, 866; 1 Salk. 388) show that the only question in fact decided was a technical question of pleading. The action was in replevin, and the defendant by his "avowry" showed circumstances from which the majority of the court inferred that the plaintiff was necessarily a guest. The question before the court arose upon demurrer, and as Judge Bronson, in Grinnell v. Cook, 3 Hill, 485, 490, 38 Am. Dec. 663, pointed out:

"The decision turned on the construction of the avowry, and the proper mode of pleading."

Judge Bronson has also clearly shown that the dictum of Judges Powel and Gould in the Yorke Case, against the opinion of Lord Holt, was based upon the authority of Robinson v. Walter, Poph. Rep. 127. He also shows, from Robinson v. Walter, as reported in 3 Bulst. 269, that it affirmatively appeared that the person bringing the horse to the inn was a guest, and that therefore Robinson v. Walter furnished no authority for the dictum contained in the Yorke Case. Speaking of Mason v. Thompson, Judge Bronson said:

"Where, as in Mason v. Thompson, the owner has never been at the inn, and never intends to go there as a guest, it seems to me little short of downright absurdity to say that in legal contemplation he is a guest."

Judges Potter and Bockes discussed the same queston in Ingalsbee v. Wood, 36 Barb. 452, and reached the same conclusion as that reached by Judge Bronson, that the Yorke Case and the case of Mason v. Thompson were incorrectly decided. Judge Bockes said:

"The appellant's counsel relies on Mason v. Thompson, 9 Pick. (Mass.) 280 [20 Am. Dec. 471], Yorke v. Grenaugh, 2 Ld. Raymd. 860, and Robinson v. Walter, Poph. Rep. 127. It is enough to say that these cases are considered in Grinnell v. Cook, 3 Hill, 485 [38 Am. Dec. 663], and that the doctrine of Mason v. Thompson, which was supposed, but erroneously, to receive support from the other two cases cited, is distinctly repudiated."

Judge Potter in the same case said:

"Mason v. Thompson, therefore, stands alone, and stands, as I think, upon this point, without a ground of principle to support it. Grinnell v. Cook, 3 Hill, 485 [38 Am. Dec. 663], is a later and much better considered case in our own court, and entirely overturns Mason v. Thompson."

The Court of Appeals (33 N. Y. 577, 88 Am. Dec. 409), in affirming the opinion of the General Term in Ingalsbee v. Wood, declined to follow Mason v. Thompson, and Porter, J., said:

"The authorities upon which it rests for support were fully considered in the able opinions delivered by Judge Bronson in the case of Grinnell v. Cook and by Judges Potter and Bockes in the present case in the court below, and we think their reasoning conclusive against the doctrine that an innkeeper can be held as an insurer of property received from one who is neither traveler nor guest."

It is significant, also, that the authority of Mason v. Thompson has since been doubted in the state of its origin. Berkshire Woollen Co. v. Proctor, 61 Mass. 417.

The other cases upon which the respondent relies, with the exception of McDaniels v. Robinson, do not notice the destructive criticism to which the Yorke Case and the case of Mason v. Thompson have been subjected by the courts of this state. Chief Judge Redfield, in the course of a learned opinion rendered upon the first appeal taken in McDaniels v. Robinson, 26 Vt. 316, 62 Am. Dec. 574, does indeed notice this criticism, and, notwithstanding it, expresses the opinion that the doctrine of the Yorke Case and Mason v. Thompson should be followed. It is noticeable that he does not meet the criticism of Judge Bronson, but refers instead to Gelley v. Clerk, Cro. Jac. 188, 5 Bac. A, tit. "Inns and Innkeepers," c. 5, p. 666, and Bennett v. Mellor, 50 R. 273, as sustaining the same rule, and makes the point that the criticism in Grinnell v. Cook is dictum merely, and that the precise point decided in that case is not inconsistent with the Yorke Case and the case of Mason v. Thompson.

Gelley v. Clerk, supra, merely decides that where one *who was a guest* left his goods at the inn he could not recover, although the rule would be otherwise in case of a horse. This case does not support the Yorke Case, and points out that a different rule applies when property is left by a guest with the innkeeper from which the latter derives a profit than that which prevails where the property is such that the innkeeper derives no profit from it. The case is, however, not at all in point, because, like the case of Bennett v. Mellor, supra, it was there conceded that the relation of innkeeper and guest existed.

The note to the statement in Bacon's Abridgment, referred to, cites Gelley v. Clerk and the Yorke Case as authority for the statement there made.

Chief Judge Redfield also cites Peet v. McGraw, 25 Wend. 653; but it is now well settled that that case cannot be regarded as authority

for the point upon which it is frequently cited. The opinion in that case was written by Nelson, C. J.; but Bronson, J., who participated in its decision, afterwards said of it that:

"Neither the Chief Justice nor any other member of the court intended to say that either the lien or the liability could exist where the owner of the goods was not either actually or constructively the guest of the innkeeper."

The foregoing review of the cases makes it very clear, I think, that the Yorke Case and the case of Mason v. Thompson were incorrectly decided and certainly are without any authority in this state.

Judge Story, in his work on Bailments, does not declare that one who leaves his horse at an inn, but lodges elsewhere, is on that account to be considered as a guest. He does, however, declare that the innkeeper is liable in such a case for the loss of the horse, "even although the owner or traveler put up at a different place; for it is not essential to such right, or to the traveler being liable for such keep, that he should be a guest at the inn." Section 476. The cases cited to support this statement are Peet v. McGraw and Mason v. Thompson, both of which are referred to above.

In Schouler on Bailments it is said:

"When one's horse, with or without the carriage, harness, and equipments, is committed to an innkeeper to be suitably cared for, the liability of innkeeper presumably attaches thereto, although the bailor be neither lodged nor entertained in the inn. This, at least, has been repeatedly affirmed under circumstances naturally conveying an impression that the owner of the horse had never been a guest, or else had terminated the relation."

The authority cited for this rule is the Yorke Case and some of the other cases referred to above, which were all decided upon the authority of the Yorke Case. In addition to the cases referred to above, Mr. Schouler refers to Mulliner v. Florence, 3 Q. B. D. 484; but a reference to that case shows that the person who left the horses at the inn was a guest at the defendant's inn from September to January. Mr. Schouler does not assert that the rule which he declares is the law, but merely that it "has been repeatedly affirmed," and in this statement he is undoubtedly correct.

Thus, from what has been said, it is evident that the authorities which hold that an innkeeper is liable to one who merely stables his horse at an inn are the progeny of the Yorke Case.

Almost at the foundation of the English law of innkeepers stands Calye's celebrated case, 8 Coke, 32. It was decided in the Court of the King's Bench in 25 Elizabeth, and has been understood as holding that the liability of an innkeeper as such was dependent upon the existence of the relation of host and guest. Ingalsbee v. Wood, 36 Barb. 452; Strauss v. Co. Hotel Company, 12 Q. B. D. 27.

In Strauss v. Co. Hotel Company, 12 Q. B. D. 27, Lord Coleridge, C. J., said:

"The law relating to the liability of innkeepers is fully considered in Calye's Case, and it is clear that in order to make the innkeeper liable at common law the plaintiff must have been a guest in the inn, according to the words of the Latin writ which is set out in the beginning of Calye's Case."

In Smith v. Dearborn (1848) 60 Eng. Com. L. R. 131, it was held that, although the horses were left with an innkeeper, the circumstance

that at a subsequent period the owner took refreshment at the inn and sent a friend to be lodged there at his charge did not entitle the innkeeper to a lien. Wilde, C. J., said:

"The right of lien of an innkeeper depends upon the fact that the goods came into his possession in his character of innkeeper, as belonging to a guest."

Healey v. Gray, 68 Me. 489, 28 Am. Rep. 80, is a well-considered case. In that case the plaintiff left his mare at the stable of an inn of the defendant, to be cared for until the next day; but the plaintiff did not himself stop at the inn. The next morning the mare was found dead in the stable. Chief Justice Appleton reviewed the authorities and held the defendant not liable, saying:

"To enforce the strict common-law liability of an innkeeper, the technical relation of guest and innkeeper must be established."

In Grinnell v. Cook, supra, one Tyler, a neighbor of the innkeeper, put three of his horses in the plaintiff's stable from November 20th to December 27th, and two other horses were put in plaintiff's stable on the 9th and remained until December 27th, when the defendant took and sold the horse under an execution against Tyler without paying plaintiff $40, the amount of their keep. Tyler was not a traveler or transient person. The action was brought by the innkeeper, as plaintiff to recover the amount of his lien. The court held adversely to the plaintiff. Bronson, J., said:

"I think the extraordinary liability of the innkeeper does not attach until he actually has a guest, and without such liability the innkeeper, as such, has no lien on the goods."

In this case the court decides that, to hold the innkeeper liable, the owner of the goods must be either actually or constructively the guest of the innkeeper.

"There must be such a relation; but it is not necessary to its existence that the owner of the goods should be actually infra hospitum at the time the loss happened, or the lien accrued. For example, if a traveler leave his horse at the inn, and then go out to dine or lodge with a friend, he does not thereby cease to be a guest, and the rights and liabilities of the person remain the same as though the traveler had not left the inn. And if the owner leave the inn and go to another town, intending to be absent two or three days, it seems that the same rule holds good, so far as relates to property for the care and keeping of which the host is to receive a compensation; but it is otherwise in relation to inanimate property, from which the host derives no advantage, and if that be stolen during such absence of the guest the innkeeper will not be answerable."

Ingalsbee v. Wood, 36 Barb. 452, affirmed 33 N. Y. 577, 88 Am. Dec. 409, was an action to recover the value of a horse and harness, left with an innkeeper. The owner did not stop, or propose to stop, at the inn, but stayed during the night with relatives. During the night a fire occurred, and the horse and harness and defendant's barn were destroyed. It was held that the innkeeper was not liable. The true rule is that declared by the Court of Appeals by Judge Porter:

"The liability of the innkeeper as an insurer presupposes the relation of host and guest. It had its origin in an ancient custom of the realm, which fixed the correlative rights and obligations of the parties, by securing to the

traveler a special remedy for his goods, and to the host a specific lien for his charges. These were peculiar and mutual rights necessary to the particular relation. But an innkeeper is not restricted to the special business of his calling, and he is free to contract with those who do not care to become his guests. Where he receives property from one who is neither a guest nor a traveler, the custom of the realm has no application."

In Mowers v. Fethers, 61 N. Y. 34, 19 Am. Rep. 244, the plaintiffs entered into an agreement with defendant, an innkeeper, that their stallion should be stationed at defendant's inn for two days in each week during the season, defendant to furnish necessary accommodations and a specified box stall, also to furnish oats for the horse and meals for the man in charge, at a stipulated price less than the ordinary charge to travelers. Plaintiffs were to feed and care for their horse. Defendant's barn and the horse therein were destroyed by fire. It was held that the relation of guest and innkeeper did not exist, and that defendant's liability, if any, was not governed by the rules applicable to that relationship. Reynolds, C., said:

"The obligation to respond for injury to property depends upon his duty to receive and entertain as an innkeeper, and they must stand or fall together."

The innkeeper's lien and his liability as an innkeeper is dependent upon the existence of the relation of host and guest. Here the evidence shows that the plaintiff never intended to become a guest of the defendant's inn, and the defendant never intended to receive him as such. The contract between them was simply a special contract to stable and care for the plaintiff's horse during the night. In determining the question of fact as to whether or not the relation of host and guest existed, we must consider whether the plaintiff ever intended to become a guest. Such an intention, either actual or presumed, must have been present in order to constitute the plaintiff a guest. In Bunn v. Johnson, 77 Mo. App. 596, 599, the court, after stating the law applicable to an innkeeper, said:

"Under the foregoing statement of the law the *intention* to become a guest is always present in such cases. Intention is a question of fact, and hence all of the authorities say that whether the relation of landlord and guest exists is always a question of fact for the jury."

Nor does the mere fact that the plaintiff purchased refreshments at the inn of itself establish his character as a guest. If he had not gone into the inn, it would be clear that he was not a guest merely from the fact that he made a contract with the defendant to stable and care for his horse during the night. Did he become a guest because he ordered a drink of whisky and a cigar, and paid for them? Clearly he did not. Those refreshments were ordered and received and paid for under a contract entirely separate and distinct from that under which he left his horse in the custody of the defendant. In Smith v. Dearborn, 60 Eng. Com. Law R. 131, the facts were somewhat similar to those at bar. The court held that:

"The carriage and horses were received by the defendant as a livery stable keeper, and not in his character of innkeeper. Neither the plaintiff nor his friend became guests at the inn, or had any refreshment supplied to them there, until after the horses and carriage had been placed there, and the lodg-

ing and refreshment so furnished were furnished upon a contract totally distinct from, and irrespective of, the contract upon which the horses and carriage were received in the first instance."

McDonald v. Edgerton, 5 Barb. 560, is cited by the respondent to show that the purchasing of liquor is itself sufficient to constitute one a guest; but the facts of that case make it clear that the plaintiff intended to become a guest of the inn and that the innkeeper intended to receive him in that capacity. When his coat was stolen, he was still a guest, and, as the case shows, he was "only out to see the town or view the training, *intending* to return to the defendant's before he left for home and get his coat."

Nor is Clute v. Wiggins, 14 Johns. 175, 7 Am. Dec. 448, cited by respondent, analagous to this case. In that case the goods were stolen while the owner was being entertained as a guest at the inn.

This review of the leading authorities reveals the following propositions as established:

[1] The innkeeper's liability and lien are dependent upon the existence of the relation of host and guest. "A guest is a transient person, who resorts to, or is received at, an inn for the purpose of obtaining the accommodations which it purports to offer." 16 Am. & Eng. Ency. 515.

[2] A guest may be such actually or constructively.

[3] The real or presumed intention to become a guest is a controlling factor in determining whether one is in fact to be considered as a guest.

[4] If a guest leave the inn intending to return, the relation of host and guest is, in the absence of evidence to the contrary, deemed to continue in the interim as to animate, but not as to inanimate, property, because the innkeeper gains a profit from the former, but none from the latter.

[5] Where one makes a contract with an innkeeper to stable and care for his horse, but does not become or intend to become a guest, the innkeeper is not liable as such for the loss of the horse.

[6] The fact that one making such a contract receives refreshments at the inn under a contract separate and distinct from that under which the horse is cared for does not of itself constitute such person a guest.

In the case at bar there is no evidence from which it can be inferred that the plaintiff intended to become either actually or constructively a guest of the defendant's inn. As the liability of the innkeeper, as such, arises only when the relation of host and guest exists, it follows that there is no basis in law for the judgment which has been rendered.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.