SASSEEN & WHITAKER, plaintiffs in error, *vs.* WILLIAM E. CLARK, defendant in error.

1. An inn-keeper is bound to extraordinary diligence in preserving the property of his guests entrusted to his care, and is liable for the same, if stolen, where the guest has complied with all the reasonable rules of the inn.

2. In case of the loss of the goods entrusted to the inn-keeper by his guest, the presumption is want of proper diligence in the landlord.

3. In any action to charge an inn-keeper for the loss of a trunk and its contents, the wife of the plaintiff is admissible to prove the contents of the trunk, independent of the act of 1866, where no other evidence is attainable, upon a policy *in favorem justiciæ*, springing out of the necessity of the case, and the nature of the subject.

4. Baggage is such articles of necessity or personal convenience as are usually carried by passengers for their personal use ; and what are such articles must, in each case, be determined by the jury from the facts and circumstances which belong to it.

5. Where a hotel keeper sends his porter to the cars, to receive the baggage of persons traveling, and baggage is delivered to the porter, and the traveler becomes the guest of the hotel, the liability of the inn-keeper as such for the baggage begins on the delivery to the porter,

and continues until re-delivery to the actual custody of the guest. And if the porter of the inn-keeper take charge of the baggage at the hotel to deliver it at the cars for the guest, the liability of the inn-keeper continues until the baggage be delivered. It devolves on the inn-keeper to show such facts as will discharge him from liability on account of such baggage.

Case.    Motion for new trial.    Tried before Judge Warner. Fulton Superior Court.    April Term, 1867.

This was an action for the loss of plaintiff's wife's baggage while she was a guest at the inn of Edward R. Sasseen and Thomas E. Whitaker, inn-keepers, under the style of Sasseen & Whitaker, keeping the hotel in Atlanta, known as "The Exchange." Plaintiff's evidence was as follows:

T. H. GLENN, by interrogatories, testified that on or about the 22d of July, 1865, he was in Atlanta, and when the train came from Chattanooga, was at the Railroad depot—met plaintiff's wife and family, and assisted her in collecting her baggage, and gave it to defendant's porter to be taken to the hotel. He counted the trunks when the porter took them—there were eight trunks. He went with Mrs. Clark to the hotel—the baggage soon came—he counted and knew that eight trunks came into the hotel, and he requested Mrs. Clark to examine and see that it was all right, which she did in his presence, and was satisfied it was all right; next morning he came to the hotel to assist Mrs. Clark and family on the train for Greensboro'—the porter's cart was at the door full of baggage, Mrs. Clark's being with it—the porter brought the baggage to the train, put it on and handed Mrs. Clark six checks, and, at the same time, told her that the other trunks were behind, and he would hurry back to the hotel and get them and bring her the checks. The porter did not bring them. Witness was going to Augusta, and traveled with Mrs. Clark as far as Greensboro'.

Several other witnesses testified to the delivery at the "Exchange," and the loss of two of them.

MARY WILLIA CLARK testified by interrogatories, that plaintiff's wife, on or about the 24th of July, 1865, lost two trunks at the Exchange, defendants' hotel in Atlanta. She

named various articles which were in the trunks, particularly, and stated that they also contained underclothing, stockings, pocket-handkerchiefs, valenciennes, edgings, collars and embroidery, and many small articles which she did not remember; but she did not know the quantity of the goods nor their value.

MISS BELL STUART testified by interrogatories, that plaintiff's wife lost two trunks, on or about the 24th of July, 1865, at said hotel. She then stated particularly, various articles, giving the value of each, making an aggregate of $379.50. These included three yards gent's cloth, $15.00 ; five yards plaid dress silk, $30.00 ; five yards grey flannel, $7.00 ; five yards nansook, $8.00. She also testified that a silver-mounted pistol, a pair of gold spectacles, a gold bracelet and a gold cuff-pin, and also such articles as Mary Willia Clark stated generally, were in the trunks, but she knew not the value of the former articles, nor the value or quantity of the latter, nor anything else to benefit plaintiff.

NOLAN A. STUART testified by interrogatories, that on or about the 6th of September, 1865, he went to Atlanta to bring about a settlement with Sasseen & Whitaker, for Mrs. Clark—was introduced to defendants and conversed with them separately. Sasseen said he would have to see Whitaker, as he was the financial partner, that the matter should have been settled long ago, and he had no doubt that Whitaker would make it satisfactory with Mrs. Clark. This was on the night of witness' arrival in Atlanta. Next morning Sasseen introduced him to Whitaker. In conversation, Whitaker said he could not pay that bill. Witness asked him if he did not say to Mrs. Clark that if she would make affidavit to the articles stolen and the value of them, he would pay her. Whitaker said he did, but that he could not pay that bill because it was too high, that he would have paid it had it been a reasonable bill. Witness asked him if Mrs. Clark had not told him that five hundred dollars would not pay her, nor replace the articles. He said she did, but that he could not nor would pay that bill unless forced to do so by law.

ELIZABETH E. CLARK's interrogatories were offered in

evidence. The defendants' attorneys objected to their being read, because she was plaintiff's wife, (which was admitted) and because (as they said) she had stated that she could prove the articles lost and the value, by Miss Bell Stuart. The plaintiff's attorneys stated that they only offered her testimony as to the articles not proven by Miss Bell Stuart and *their* value. For this purpose the Court allowed that part of her testimony read.

It was as follows : The trunks contained underclothing, stockings, pocket-handkerchiefs worth $125.00 ; valenciennes, edgings, collars and embroidery, worth $100.00   To the proof of these items in this form, defendants' attorneys objected, because the items were not specifically set forth. The objection was overruled. They were so declared for in the bill of particulars and no objection had been made to the bill of particulars. She gave the following further evidence of contents.

Two reams English paper, $10.00; 1 silver mounted pistol, $20.00 ; 1 lady's handsome comb, $20.00 ; 1 handsome bodice, $4.00 ; 18 yards bleached cotton cloth $10.00 ; 1 pair of kid gloves $2.00 ; 1 pair heavy gold spectacles, $20.00 ; 1 bracelet, $15.00 ; 1 cuff pin, $4.00, making a total of $379.00.

She testified that she knew no person by whom she could prove the articles in her trunks or their value, except Miss Bell Stuart.

Plaintiff closed. Defendants' attorneys read the interrogatories of ISAAC W. SCOTT, who testified that he was clerk at said hotel from April, 1865, to June, 1866—that he recollected Mrs. Clark coming to the hotel, in company with E. Crutchfield, in July, 1865. The baggage was brought in by wagons not in the employment of the house. The pieces were not counted by witness, when they came in or when they went out—they were taken out next morning by one of the porters of the hotel, and Mrs. Clark left with them. The baggage was near Mrs. Clark's room, nearly fronting the office door, and there was no chance for any of it to be removed without his knowledge, as he was with it all night, and none of it was taken while in the hotel. Witness was in the room when the baggage came and when it went out. Mrs. Clark

did not complain of the loss of any baggage before she left the hotel—she left with the baggage—the porter who took the baggage to the train was not gone over fifteen minutes before he returned.

Upon cross-examination, he stated in answer to the question, "Did you see the porter or baggage after it went out of the door of the hotel?" "I did not after it left the hotel."

Defendant closed.

Plaintiff, in rebuttal, proved that the hotel was kept in the second story (stores being below,) that the stand occupied by the Clerk was at one side of the door, and when he stood there, he could not see outside of the door on the side next to him, that the way outside of the door led on to a verandah, and then down a narrow stairway, on the side occupied by the Clerk, and that, from the desk, it was impossible to see whether the baggage went down stairs, or to see it after it got down stairs.

After argument, defendant's attorneys requested the Court to charge the jury, "If the baggage was lost by the porters or other persons after it left the hotel, the hotel-keepers would not be liable for said loss as inn-keepers; it was not the duty of hotel-heepers as such to carry the baggage to the depot, or to deliver it elsewhere beyond the hotel premises, and if it was carried beyond the hotel premises by a servant of the hotel, the hotel-keeper would not be liable, as such, for any loss occasioned while so carried; that if the plaintiff or his wife was present, and consented to the delivery of the trunks to a porter or other person, to be carried beyond the hotel premises, this excused the hotel-keepers from further liability; that hotel-keepers are not liable for baggage beyond what is usually carried by travellers for their convenience as travellers, and to entitle plaintiff to recover he must set out in his bill of particulars each item separately, and prove it as set out. (The bill of particulars was proved as aforesaid.)

The Court charged the jury in substance as follows:

This is an action brought by the plaintiff against the defendants as inn-keepers for the loss of two trunks and contents. Under the law, an inn-keeper is bound to extraordinary dili-

Sasseen & Whitaker *vs.* Clark.

gence in preserving the property of his guests entrusted to his care, and is liable for the same if stolen, when the guest has complied with all reasonable rules of the inn.

Does the evidence in this case establish the fact that the trunks and contents were deposited by the plaintiff in the public room of the defendants' inn? Does the evidence establish the further fact, that the trunks and contents were lost while the same were in the possession or under the control of the defendants as inn-keepers, their servants and agents? If the evidence establishes these facts in your judgment, then the defendants are liable under the law for the proven value of the property lost while in the possession of defendants as inn-keepers, their servants and agents.

If, however, you should believe, from the evidence, that the defendants exercised extraordinary diligence in preserving and taking care of the trunks, and that the same were lost, without any fault or negligence on their part, or on the part of their servants or agents, then you may find a verdict for the defendants.

In cases of the loss of property placed in the custody of an inn-keeper, the presumption of law is the want of proper diligence on his part, and the burden of proof is on him to show that he exercised that degree of care and diligence which the law required of him.

The verdict was for $690.30.

A new trial was moved for by defendants' attorneys, on the ground that the Court erred, in allowing plaintiff's wife's evidence read to the jury; in not charging the jury as requested; in allowing evidence " of loss of goods, wares, and mercandise, including a pistol and jewelry, to which evidence defendants objected," and because the verdict is contrary to the weight of the evidence and the law.

The Court refused a new trial, and this refusal defendants' attorneys assigned as error.

HAMMOND & MYNATT, for plaintiffs in error, contended that Mrs. Clark should have been rejected, citing 1st Gr. Ev., sec. 334, 348, 349; 12th Ga. R., 217; New Code 3783;

that if the trunks were lost after they left the inn there could be no recovery, citing Hawley vs. Smith; 25th Wendell's R.; Story on Bail, sec. 3472; Jones on Bail 96; 26 Vermt. R., 316; 28th do., 387; 2d Ky. R., 439; that the Court erred in not charging as to what constituted baggage, New Code, sec. 2052; Story on B., sec. 499; 12th Ga., 217; 11th Md., 434, and in refusing to charge as requested as to bill of particulars, Code, secs. 3304, 3311; Dudley's R., 17; Gen. Index 89; 3 Kelly 81.

A. W. HAMMMOND & SON, for defendants in error, replied the wife was competent, Dibble vs. Brown & Harris, 12th Ga., 221; Clarke vs. Spencer, 10th Watt. R., 335; Gr. Ev., sec. 348, etc; Code, sec. 3783, Act of 15th Dec., 1866, pamp. 138; the rule excluding *parties* applies to husband and wife, Gr. Ev. 436 p., sec. 334, and to that rule there were exceptions, Littlefield vs. Rice, 10th Metcalf's R., 287; Stanton vs. Willson, 3 Days R., 37; Strange R., 527, Hughes, admr., vs. Stokes, admr., 1st Haywood R; again her information was not derived by reason of the relation, and therefore she is not excluded, Gr. Ev., sec. 338; Coffin vs. Jones, 13 Pick R., 445; Williams & Baldwin, 7 Vermt., 506; Cornel vs. Vanartsdolin, 4 Burr R., 364; Wells vs. Tucker, 3 Binn 366; at common law if husband was competent the wife was, 2d Strange 1095, 2d Ld. Raymond R., 744; Marshall vs. Davis, 1st Wend., 109; Brayfield vs. Brayfield, 3 Har. & John., 208; as to what is baggage see Dibble vs. Brown, *el. al.*, 12th Ga. R. 225.

WALKER, J.

1. By the common law as well as by our statutes, inn-keepers are bound to extraordinary diligence in preserving the property of their guests, entrusted to their care, and are liable for the same, if stolen, where the guests have complied with all reasonable rules of the inns. Rev. Code, sec. 2091; Story on Bail, secs. 470, 471; Edwards on Bail 4028.

2. In case of the loss of the goods entrusted to the care

of the inn-keeper by his guest the presumption is a want of proper diligence in the landlord. Rev. Code, sec. 2094; Story on Bail, sec. 472. He may, however, relieve himself from liability, by showing that the loss was occasioned by the negligence or fault of the guest himself. Ib.

3. In an action to charge an inn-keeper for the loss of a trunk and its contents, the wife of the plaintiff is admissible to prove the contents of the trunk, independent of the act of 1866, when no other evidence is attainable, upon a policy *in favorem justiciæ*, springing out of the necessity of the case, and the nature of the subject. Dibble vs. Brown, 12 Ga. Rep., 217.

4. There seems to be a disposition to limit the liability of an inn-keeper as such for such of the goods of his guests only as is usually denominated baggage; that is, to such articles of necessity or personal convenience as are usually carried by passengers for their personal use. What articles may be denominated baggage must in each case be determined by the jury from the facts and circumstances which belong to it. Whether the inn-keeper is not liable as such for all the personal property that his guest may deposit with him, either baggage or other personal property, may well admit of doubt. In Calyes case, 8 Coke's Rep., 33, it is among other things said, "Therefore, if one brings a bag or chest, etc., of evidences into the inn, or obligations, deeds, or other specialties, and by default of the inn-keeper they are taken away, the inn-keeper shall answer for them, and the writ shall be *bona et catalla* generally, and the declaration shall be special. These words, *bona et catalla* restrain the latter words to extend only to movables. And these words aforesaid, *absque substractione seu omissione*, extend to all movable goods." This is the leading case upon the subject decided in 1584, and it would seem to enlarge the liability of the inn-keeper so as to embrace all the goods of his guest entrusted to his care. See also note to Calyes case, 1 Sm. L. C. p., 51; see notes to the original case as reported in 8 Coke's R., 320, and American notes to Coggs vs. Barnard, 1 Sm. L. C., 104; Edwards on Bail, p., 403. Our statute in speaking of the

liability of inn-keepers does not use the word baggage, but "the property of his guests, entrusted to his care," Rev. Code, sec. 2091. The evidence in this case showed such facts as made the inn-keeper liable under either view of the case. The idea of confining the liability for baggage only has probably originated from the somewhat analagous case of common carriers, where there is a liability as common carriers for baggage without other compensation than the fare for passengers. 12 Ga. R., 224.

5. The beginning and the termination of the liability of an inn-keeper for goods of his guests must depend upon circumstances. The common usage of the country must have great weight in all such cases. Sto. on Bail, sec. 478. Where the goods are delivered at the usual place for such goods at the inn, the inn-keeper is chargeable with them, although not strictly within the inn. Sto. on Bail. sec. 480. It matters not where the goods are deposited, provided they are placed in the custody of the inn-keeper. Edwards on Bail, p. 405. The responsibility of the inn-keeper begins from the moment he receives the guest with his goods, and it ends when the relation between him and the guest is dissolved. The privileges and responsibilities of the inn-holder are reciprocal and dependent upon each other, as a duty upon a right. For this liability he has a lien on the goods entrusted to him. Where he has no lien, he is not liable as an inn-keeper; and he has a lien only where the property has been delivered to him by a traveler or guest. Ed. on Bail, p. 407. The liability of the inn-keeper for the goods of his guests, entrusted to his care or to the care of his servants, begins from the time the goods are entrusted, and at the place where the inn-keeper usually takes charge of the baggage of his guests. At our railroad depots the inn-keepers very often have their servants, usually called porters, for the purpose of taking charge of the goods of travelers in order to induce them to become guests of the hotel. A traveler delivers his trunk or other personal property to one of these servants to be taken to the hotel, he thereby impliedly contracts to become a guest of the hotel to which the servant is attached;

and if he comply with such implied contract, the liability of the hotel-keeper for the care of the goods, begins from the time of the delivery to his servant, and that liability continues until the goods be again delivered to the actual custody and control of the guest.   And if the servant of the inn-keeper take charge of the baggage, goods, etc., at the hotel to deliver at the cars, for the guest, such liability continues until such delivery.   See Richards vs. The London, etc., R. R. Co. 7 M. & G. 839 (62, E. C. L. R. 837.)   When the proof once shows the inn-keeper in possession of and liable for the baggage of his guest, it devolves on him to show such facts as will discharge him from liability.   If the custom be to deliver at the cars, or if he undertakes to do so, the proof should show a compliance with such undertaking.

Judgment affirmed.