## COSKERY v. NAGLE.

When a traveler arrives at a depot and is met by one who is the porter of an inn, hotel or house kept for the accommodation of transient guests, wayfarers and travelers, who indicates to the traveler a certain conveyance by which he can go to such place or not, and the traveler delivers to him his baggage or the check therefor, the traveler is thereby a guest of such inn, hotel or house, so far as to render the proprietor thereof liable for the safe-keeping

or redelivery of the same; the liability of the proprietor commences from the time of the delivery of the baggage or check to the porter. All that the traveler must do is to assure himself that the person representing himself as such porter is in fact the porter of the house.

(a) The innkeeper cannot escape liability by evidence that the porter was not authorized to receive baggage, checks for baggage, or guests, at the depot, his duty being simply to advertise the hotel and suggest it to strangers, where it is not shown that the traveler knew of any such limitation upon the porter's authority, but simply knew he was the porter of the hotel.

(b) Any private arrangement between the landlord and a carrier for the transportation of persons and baggage to his house, does not affect the traveler, who has the right to assume, without any knowledge to the contrary, that such carrier is in fact authorized by the proprietor of the house to safely and securely transport himself and his baggage; and when loss occurs by the negligence of such carrier, the proprietor of the house is liable to the traveler.

(c) The verdict was demanded by law and evidence; and exceptions touching the charge are immaterial.

November 18, 1889.

Innkeepers. Principal and agent. Notice. Before Judge Eve. City court of Richmond county. February term, 1889.

Reported in the decision.

W. K. Miller, for plaintiff in error.

W. H. Fleming, *contra*.

Blandford, Justice.

The plaintiff was met at the depot by a porter of the hotel, who wore a cap with the name of the hotel on it, and who cried the name of the hotel, and he was shown by this porter to the omnibus which was to take him to the hotel. He delivered to the porter the check for his baggage, telling him that he was anxious to have it promptly; to which the porter replied that it would come right along in another wagon. The porter, in the presence of the plaintiff, gave the check to another man, who, according to the plaintiff's testimony, he "did not know was any other than an attaché of the hotel." The plaintiff had

stopped at the same hotel about a week before, at which time this porter was connected with the hotel in the same way, and when he entrusted his check to him on this occasion, he recognized him as the same porter who on the former occasion had performed similar services for him. The plaintiff did not know that the omnibus or the wagon which brought the baggage was run by another person than the proprietor of the hotel, and when he paid his fare on the former occasion supposed he was paying it to the hotel. The omnibus was the usual mode of conveyance from the depot to the hotel, the proprietor of the hotel having agreed with the transfer company for the omnibus and wagon to run to the hotel, and one of the omnibuses had the name of the hotel on it. He was taken to the hotel and received as a guest. The valise was not delivered at the hotel. It was delivered by the railroad company to the holder of the check, and there was no further trace of it. The plaintiff demanded it of the hotel proprietor, and was then told by him that the transfer company was liable. He brought suit against the hotel proprietor for the value of his valise and its contents, and a verdict for the full amount was rendered in his favor.

An innkeeper is bound to extraordinary diligence in preserving the property of his guests entrusted to his care. Code, §2117. It need not be so entrusted by actual delivery. Code, §2118. In case of loss, the presumption is want of proper diligence in the landlord. Negligence or default of the guest himself, of which the loss is a consequence, is a sufficient defence. Code, §2120. It has been held by this court that "where a hotel-keeper sends his porter to the cars, to receive the baggage of persons traveling, and baggage is delivered to the porter, and the traveler becomes the guest of the hotel, the liability of the innkeeper as such for the

baggage begins on the delivery to the porter, and continues until redelivery to the actual custody of the guest." *Sasseen* v. *Clark*, 37 *Ga.* 242.

The innkeeper (who is the plaintiff in error here) seeks to escape the effect of this decision by evidence that the porter in the present case was not authorized to receive baggage, checks for baggage, or guests, at the depot, his duty being simply to advertise the hotel and suggest it to strangers.    We do not think that this makes any difference in the present case, it not being shown that the plaintiff knew of any such limitation upon the porter's authority.    He simply knew that he was the porter of the hotel, a servant whose duty ordinarily, as the name implies, is to carry parcels and luggage.    " Where the innkeeper sends his carriage-driver or porter to the railroad station to solicit custom, he may become responsible for his guest's baggage from the moment the traveler confides it to the driver's or the porter's hands."    Schouler on Bailments, 269, citing *Sasseen* v. *Clark, supra,* and Dickenson *v.* Winchester, 4 Cush. 114.    In the latter case, the doctrine of *respondeat superior,* which is invoked by the defendant here, is discussed by Shaw, C. J., and the distinction made that while the innkeeper, who had employed the conveyance of another to meet at the cars and carry to his hotel passengers who should choose to come there, might not be liable if the carriage-driver had negligently run over somebody in the street, yet he would be liable for the negligent loss of a traveler's baggage by the carriage-driver, where travelers were directed by him, in his own interest, to such conveyance; and he would be estopped to deny that the person thus actually employed was his agent for that purpose.

" The usages of travel, together with the vast variety of goods, parcels and baggage which are customarily carried by travelers, are to be considered in determin-

ing what circumstances will charge the innkeeper with the care of property coming to his hotel. Horses and carriages are properly entrusted to the hostler, and parcels to the agent or servant accustomed to receive them." Edwards on Bailments, §460.

The defendant insisted that the plaintiff was negligent in having failed to call the porter's attention to the fact that his valise contained valuable jewelry and clothing; and in support of this position we are cited to the case of Fowler *v.* Dorlon, 24 Barbour, 384. On examination it does not seem to help the plaintiff in error on this point, and seems to be against him in another respect. The plaintiff in that case, on alighting from the train at the depot, gave the check for his valise to one Blake, with a request to get his valise. Blake was an employé of the stage line which had its office in the hotel, and he boarded at the hotel, and with the knowledge of the proprietor had been in the habit of soliciting custom for the house. Blake got the valise, returned and set it down, and went off and left it in order to attend to his duties with the stage company. The plaintiff, who saw him approaching with the valise, but did not see him set it down, went on his way to the defendant's hotel, where he was received as a guest. He had said nothing to Blake evincing an intention to become the defendant's guest, but simply handed him the check and told him to get the valise. In discussing the plaintiff's diligence, the court says " he was not bound to disclose the fact that the valise contained money." The court adds, " If he thought fit to entrust a man in the situation of Blake with so valuable an article, it would seem but a reasonable exercise of prudence that he should at least request him to deliver it to the hotel without delay." The evidence shows that this was done in the present case. As to the authority of Blake as agent of the hotel, the court below in that

case charged that "if Blake was in the actual employment of the defendants, or, if not in their actual employment, was acting with the knowledge and approbation of the defendants, in such a manner as to induce the guests of the defendants to believe that he was their servant, they were liable for his acts, and the baggage received by him of the plaintiff was within the custody of the defendant as an innkeeper." The only criticism the court made upon this charge was, that "the judge should have gone further and submitted to the jury the distinct question whether he received the baggage as the servant of the defendants, which fact, as the charge stands, seems to have been assumed; but there is no exception to the charge, and this defect is not available to the defendant."

An English case which seems in point is the following: Bather v. Day, 8 L. T. Rep. 205 (1863). The plaintiff arrived at the defendant's inn with a mare and gig, which were taken to a stable-yard some distance from the inn, where it was customary to take horses and vehicles of guests. One Rowles, who acted as hostler for the guests, kept this stable, and was an independent livery-stable-keeper, doing business with the public generally, besides the guests of the inn. He received no wages from the inn and did not reside there. While the plaintiff was temporarily away from the inn, but while the horse was still in the stable, the stable-keeper negligently injured the horse. The plaintiff sued the innkeeper, and the innkeeper contended that the rule of master and servant did not apply so as to make her responsible, the stables not being hers but the stable-keeper's. The court gave judgment against the innkeeper, and the court of exchequer, on appeal, affirmed the judgment, holding that while as between the stable-keeper and the innkeeper the stables were not under the innkeeper's control, yet as between the innkeeper and the

plaintiff they were the stables of the inn and the stable-man the hostler of the inn. The court said, "We cannot enter into the private arrangement between the keeper and the person acting as her 'Master of the Horse.' It is the apparent relation, and not the private one, with which we have to deal. The respondent was a guest, and the horse was 'taken around to the stables in the usual way'," etc.

The liability of an innkeeper, at common law and in this State, is that of an insurer. We know that this is a harsh rule, but it seems to have been the policy of the law of England—which was adopted by this State—to hold landlords and proprietors of inns or hotels, or houses kept for the accommodation of transient guests, wayfarers and travelers, to the utmost respon-sibility and liability for the baggage and goods of such persons entrusted to their care. When a traveler ar-rives at a depot and is met by one who is the porter of an inn, hotel or house kept for the purpose above stated, who indicates to the traveler a certain convey-ance by which he can go to such place or not, and the traveler delivers to him his baggage or the check therefor, the traveler is thereby a guest of such inn, hotel or house, so far as to render the proprietor thereof liable for the safe-keeping or redelivery of the same; the liability of the proprietor commences from the time of the delivery of the baggage or check to the porter. All that the traveler must do is to assure himself that the person representing himself as such porter, is in fact the porter of the house. Any private arrangement between the landlord and a carrier for the transpor-tation of persons and baggage to his house, does not affect the traveler, who has the right to assume, without any knowledge to the contrary, that such carrier is in fact authorized by the proprietor of the house to safely and securely transport himself and his baggage; and

when loss occurs by the negligence of such carrier, the proprietor of the house is liable to the traveler.

And this rule is founded, not upon the fact that the law gives to the landlord or proprietor of the house a lien upon the baggage or goods committed to his care, but upon the policy of the law that such should be the liability of the proprietor. In this case there never could have been any lien of the landlord upon the baggage at the time the loss occurred, but the liability of the landlord was the same notwithstanding no such lien existed. The lien of the landlord grows out of the indebtedness of the guest for his board during his stay at the house. These views we think are sufficiently sustained by the authorities above referred to.

The exceptions which have been taken by the plaintiff in error to the charge of the court and refusals to charge, in our opinion, are immaterial under the facts of this case. The verdict was demanded by the evidence and the law; and the judgment is          *Affirmed.*