## BREWER *v.* CASWELL.

Where an innkeeper provided a lot and stable in which his guests were permitted to keep their horses without charge, but it was customary to charge for feed for horses if furnished by the innkeeper, it was not sufficient evidence of the relation of innkeeper and guest that one drove into the lot, unhitched his mule from his buggy, and placed the mule in a stable pointed out by a boy in charge of the lot and stables, and then left the premises without entering the inn or having any agree-

ment with the innkeeper or his authorized agent that he would be a guest, or that the innkeeper should furnish any feed for the mule, or doing anything further towards becoming a guest, though the owner stated to the boy that he would return and would himself feed his mule at dinner time, and though he testified that he intended to take dinner at the inn with another person who accompanied him, and who dined there, but did not do so because before the dinner hour he learned of injury to the mule.

Argued January 16,—Decided May 12, 1909.

Action for damages. Before Judge Seabrook. Liberty superior court. November 19, 1907.

S. T. Brewer instituted suit in the superior court of Liberty county against J. M. Caswell, for the recovery of $150, the value of a mule, the property of the plaintiff, which was lodged by him in the stable of the defendant, and was stung by certain bees kept by the defendant behind the stable and in close proximity thereto, from the effects of which the mule died. In his own behalf the plaintiff testified, among other things, as follows: The defendant keeps a hotel or inn at Hinesville and in connection therewith conducts this stable and lot. "On the day named in the declaration I came to Hinesville with Middleton. We drove my mule, and upon arrival in town drove into the lot of defendant. There was a boy in charge of the lot and stable, who showed us a stall, the only one not occupied, in which we placed the mule. · I instructed the boy that the mule was young and excitable, and that I would come back at dinner and feed him. I had no feed in my buggy, and expected to get the feed from the stable. Mr. Middleton, who came with me, took dinner at the hotel, and I expected to take dinner with him. Just on the outside of the stable and immediately against the rear of the stable in which my mule was placed was a row of bee-hives. I was notified after leaving the stable that my mule had been stung by the bees. I hurried down to the hotel and found the mule covered with them. I began to doctor the mule, and did everything for him I could. This was about dinner time, and when dinner came on I was busy with attending to the mule, and could not stop to eat dinner. The mule died from the effects of the stings when I got home. The mule was four years old, and reasonably worth $150. I did not know anything about the bees being at the back of the stall.. If I had, I would not have allowed the mule to be placed in the stall. I did not make any contract with the boy as to the pay for keeping

the mule, but expected to pay the usual charge. If the mule had not been stung I would have taken dinner with Middleton at the hotel, and would have also fed my mule at the stable, and expected to pay for it. I was prevented from taking dinner there because of the injury to the mule. I told Mr. Caswell's agent that I would come back at dinner, but did not tell him or anybody else that I would come back and take dinner at the hotel." Martin, sworn for the plaintiff, testified: "Mr. Caswell keeps a hotel in Hinesville, and charges guests for stopping with him. He keeps no book for his guests to register in when stopping there." Lang testified: He had always paid for the feed of his horse when he stopped at the Caswell hotel and placed his horse in the stables, but did not pay for stable room. . Mr. Caswell never made any charge for a man who simply left his horse in the stable. The plaintiff closed, and upon motion for nonsuit the judge passed the following order: "After argument, . . the plaintiff's counsel stating, 'The plaintiff does not rely for recovery upon section 3821 of the Civil Code,' it is ordered that said motion for nonsuit be and is hereby sustained, and said case is dismissed." The plaintiff excepted to the order granting the nonsuit, and assigned error thereon on the ground that the judgment was contrary to law and evidence. In his brief counsel for plaintiff in, error took the position that the defendant was liable to the plaintiff only because the defendant was an innkeeper and the plaintiff was his guest, and the evidence was sufficient to carry the case to the jury on the question as to whether the relation of innkeeper and guest, and the consequent liability arising therefrom, existed.

*Donald Fraser,* for plaintiff. *Garrard & Meldrim, Edwin A. Cohen,* and *Ben. A. Way,* for defendant.

ATKINSON, J. Under the contention of the plaintiff the question is whether the defendant was liable as an innkeeper to the plaintiff as his guest. All persons entertained for hire at an inn are guests. Civil Code, §2934. "It is not necessary to show actual delivery to the innkeeper. Depositing goods in a public room set apart for such articles or leaving them in the room of the guest, or placing a horse in the stable, is a delivery to the innkeeper; if, however, the guest delivers his goods to a servant under special charge to him to keep the same, the innkeeper is not liable therefor." §2936. The expressions, "depositing goods in a public

room set apart for such articles," and "placing a horse in the stable," as used in the section of the code last cited, are to be understood as relating to such acts of a guest as distinguished from such acts by a mere intruder or stranger having no relation of guest to the innkeeper, and at no time establishing such a relation. It was held in Yorke *v.* Grindstone, 1 Salk. 388 (Yorke *v* Grenaugh, 2 Lord Raymond, 866), that if a traveller leave his horse at an inn and lodge elsewhere, he is, for the purpose of this rule, to be deemed a guest, because, it was said, it "must be fed, by which the innkeeper has gain; otherwise if he had left a trunk or a dead thing." There has been some diversity of opinion as to when the relationship of innkeeper and guest was impliedly established by the mere leaving of a horse at the stable of an innkeeper, at least so far as affected the safe-keeping of the horse and liability for any injury to it. But the authorities which have held that the relation of innkeeper and guest was thus established have had, as their underlying reason, the existence of a state of facts "by which the innkeeper has gain," as it is expressed in the quotation above made; that is, that there should be such an express or implied contract between the person who leaves the horse and the innkeeper as would authorize a charge by the latter as such for the service. See note to Calye's case, 1 Smith's Lead. Cas. (9th ed.) 250; Healey *v.* Gray, 68 Me. 489 (28 Am. R. 80); Ingallsbee *v.* Wood, 33 N. Y. 577 (88 Am. D. 409); Mason *v.* Thompson, 9 Pick, 280 (20 Am. D. 471); McDaniels *v.* Robinson, 26 Vt. 316 (62 Am. D. 574); Id., 28 Vt. 387 (67 Am. D. 720); Gelley *v.* Clerk, 3 Cro. Jac. 188; Beale on Innkeepers & Hotels, §§ 121-2, 131-2; Strauss *v.* County Hotel, L. R. 12 Q. B. Div. 27. Here the plaintiff did not expressly or impliedly place his horse with the innkeeper or his servant to be fed and cared for. He stated to the latter that he intended to return at dinner time and feed the horse himself. He gave no intimation of any intention to obtain the feed from the innkeeper. The evidence showed that there was no custom to charge where a person provided his own feed for his mule. There was lacking, therefore, the establishment of any situation which created a right to profit on the part of the innkeeper. The plaintiff, though on the premises, did not go to the inn, or give any intimation to the proprietor of his presence or intention to become a guest or even of his expectation to return for dinner.

He testified that his companion took dinner at the inn, and that he intended to take dinner with his comrade; but whether this was to be as the guest of the latter or as the guest of the innkeeper is not clear. At any rate, whatever was his private intention on this subject, it was in no way shown to have been communicated to the innkeeper or any authorized agent of his. The plaintiff left the premises. Where he went or how long he stayed does not appear. But before the dinner hour had arrived he heard that his mule had been stung by bees, and went to its relief. So that he never in fact took dinner at the inn, nor did anything else tending to establish the relation of innkeeper and guest. These facts were not sufficient to show that when his mule was injured he was the guest of the inn, and that the defendant was liable as an innkeeper for such injury. This ruling does not in any way conflict with that in *Coskery* v. *Nagle*, 83 *Ga.* 696 (10 S. E. 491, 6 L. R. A. 483, 20 Am. St. R. 333), and similar cases, where a traveller delivered his baggage to a porter of an inn at a station for the purpose of having it carried to the inn where he was proceeding to become a guest, and did so become. See, on the general subject, Tulane Hotel Co. *v.* Holohan, 112 Tenn. 214 (79 S. W. 113, 105 Am. St. R. 930, 2 Am. & Eng. Ann. Cas. 345, and note).

*Judgment affirmed. All the Justices concur.*