Jones, J.
It would seem from this record that the payment of the hotel bill by the plaintiff below and his engagement for the storage of his trunk were simultaneously made. There is no question that at .this time the plaintiff and defendant occupied the relation of innkeeper and guest. Not only does this relation appear from the evidence, but at common law the plaintiff would be held to occupy that relation until he had had a reasonable length of time to remove his baggage from the hotel. This principle seems to be in accord with all the authorities.
“The innkeeper’s liability does not, however, cease at the very instant a guest leaves an inn, but the latter has a reasonable length of time, dependent *642 on the circumstances of the case, in which to remove his goods, during which period the extraordinary liability of the innkeeper continues.” 14 Ruling Case Law, 532; 22 Cyc., 1088; Maxwell v. Gerard, 84 Hun, 537; Adams v. Clem, 41 Ga., 65, and Sas-seen & Whitaker v. Clark, 37 Ga., 242.
It may be conceded that at common law the general trend of authority is to the effect that when a guest pays his bill at an inn and departs without taking his baggage therefrom within a reasonable length of time, the relation of innkeeper and guest is terminated and the former relieved from the strict responsibility imposed upon him, holding him liable for goods lost unless the loss has been caused by the act of God or by a public enemy or by the fault of the owner. Palace Hotel Co. v. Medart, 87 Ohio St., 130, 134.
We are not here concerned with that rule of liability, for it appears both by the pleadings and the evidence that if any liability accrued it arose from a bailment for the accommodation of both entered into between the bailor and the bailee about August 1, 1917, when the plaintiff left the defendant’s hotel. This special engagement entered into between them, while relieving the innkeeper from the stringent rule of liability under the common law for the safekeeping of goods, imposed upon the hotel bailee the duty of exercising reasonable care for their preservation. This arrangement is based upon a sufficient consideration and imposes upon the bailee the duty required of it as a bailee for hire. Under the facts disclosed in this case this is a bail *643 ment for mutual benefit. “Where a bailment is a mere incident to the performance of services for which the bailee receives compensation or to the conduct of a business from which the bailee derives profit, it is a bailment for mutual benefit, although the bailee receives no compensation for the bailment, as such.” 6 Corpus Juris, 1100.
Judge Story in his work on bailments (9 ed.), page 27, states the principle thus: “When the bailment is reciprocally beneficial to both parties, the law requires ordinary diligence on the part of the bailee, and makes him responsible for ordinary neglect.” Manifestly the bailment, in a case like the present, is of the latter class, for, while the customer pays nothing'directly, or eo nomine, for the safe-keeping of his effects, the dealer receives his compensation in the profits of the trade of which the bailment is a necessary incident.
An early case in point is that of White v. Humphery, 11 Q. B., 43, 12 Jur., 417. In that case the defendant bailee carried on the business, both of carrier and wharfinger. As such, he received into his warehouse several tons of hops, which were to be conveyed to London for a compensation, the bailee in the meantime providing storage for the hops, for which he received no compensation. The hops remained in the warehouse for about thirteen months and were damaged by mice while in the defendant’s custody. The learned judge charged the jury “that the advantage of carrying the hops for hire might be considered as payment for the warehousing, and that the defendant was not a grat *644 uitous bailee.” Lord. Denman, C. J., committed himself and his associates upon the queen’s bench to the principle announced by the judge on the trial, and held that the instruction was correct.
In Newhall v. Paige, 10 Gray (76 Mass.), 366, it was held that “a contingent benefit' is a sufficient consideration for undertaking ahailment.” In that case it appeared that the only compensation received by the bailee for receiving and storing merchandise was the advantage of bringing the bailee business. The trial court charged that the benefit accruing to the bailee should be certain “and not a mere contingent, uncertain and indirect beuefit or expectation of benefit.” In his opinion, Bigelow, J., at page 368, says: “The only error in this case was in the instructions given to the jury, and consisted in telling them that the defendant could not be considered a bailee for hire unless his compensation was for some certain benefit to himself, and that a mere contingent, uncertain and indirect benefit would not constitute such a consideration as was necessary to establish a contract of bailment for hire or reward. This was stating the proposition more broadly than the rules of law will warrant. A person becomes a bailee for hire when he takes property into his care and custody for a compensation. The nature and amount of the compensation are immaterial. The law will not inquire into its sufficiency or the certainty of its being realized by the bailee. * * * The law does not undertake to determine the adequacy of a consideration. That is left to the parties, who are the sole judges of the *645 benefits or advantages to be derived from their contracts. It is sufficient if the consideration be of some value, though slight, or of a nature which may inure to the benefit of the party making the promise.”
The following authorities sustain the principle that the bailment is one for hire, although no hire was paid, where the bailment is a necessary incident of the business in which the bailee makes a profit: Sulpho-Saline Bath Co. v. Allen, 66 Neb., 295; Woodruff v. Painter & Eldridge, 150 Pa. St., 91, and Hoyt v. Clinton Hotel Co., 35 Pa. Supr. Ct., 297. However, we do not wish to extend this principle so as to include others than bailees subjected to public obligations, such as innkeepers, carriers or warehousemen.
In this case the evidence establishes that the storage rooms provided by the hotel company were used as a necessary incident to its business and with the expectation of making a profit from its customers who left their baggage until their return. This was a special arrangement entered into by the hotel company for the benefit of its customers. It had provided another baggage room for outgoing and incoming baggage. The assistant manager himself testified that the hotel had provided a special place for travelers who left their baggage until they returned and re-registered. Under this state of facts, therefore, the plaintiff established a bailment by special arrangement for storage of baggage, for the mutual benefit of bailor and bailee, and the bailee became liable for the exercise of ordinary care for its safety.
*646 In a requested finding of facts in this case the trial court found that the relationship of innkeeper and guest did not exist. While technically a guest when the arrangement for storage was made, the transaction for the storage of goods covered a period when no such relationship existed; although such future relation was contemplated with advantage to both parties. We have held that this was a bailment for the mutual benefit of both, therefore the rigid rule of obligation between innkeeper and guest gave way to the rule defining the rights and obligations between bailor and bailee for mutual benefit. As a bailee for hire impliedly contracts to use ordinary care it follows he may not contract against his own negligence or the lack of such care. Ordinarily in bailments the parties may dimmish the liability of the bailee by special contract, provided the contract is not in violation of law or of public policy and does not relieve the bailee of negligence. (6 Corpus Juris, 1112.) But in the instant case no such special contract was made, and in the absence of a special agreement the law of bailments fixes the degree of the bailee’s liability. “The general rule, at least in the United States, seems to be that where a bailor alleges and proves simply the delivery of the property to the bailee and the latter’s failure to return it on demand, a prima facie case is made out against the bailee.” 3 Ruling Case Law, 151.
The trial court found the goods were delivered to the innkeeper, and that upon demand the innkeeper *647 was unable to account for their loss. The plaintiff below, therefore, had a prima facie case against the bailee.
The judgments of the lower courts are affirmed.

Judgments affirmed.

Johnson, Wanamaker, Robinson and Matthias, JJ., concur.